Richard L. **ZALDIVAR**, et al.,
**Plaintiffs-Appellants,**

v.

**CITY OF LOS ANGELES**, et al., **Defendants,**

and

**Margaret Salazar, et al.,
Intervenors-Appellees.**

No. 84–6238.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 5, 1985.

Decided Jan. 16, 1986.

Neil Papiano, Los Angeles, Cal., for plaintiffs-appellants.

John E. Huerta, Mexican American Legal Defense & Educational Fund, Inc., Fredric D. Woocher, Center of Law In Public Interest, Los Angeles, Cal., for intervenors-appellees.

Before CHAMBERS, TANG and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

The district court granted summary judgment for intervenors and assessed sanctions against plaintiffs and their attorneys in the amount of $14,951.25 for violating Rule 11 of the Federal Rules of Civil Procedure. Plaintiffs and their attorneys appeal from that portion of the judgment assessing sanctions against them. Under the circumstances of this case, the district court improperly assessed sanctions under Rule 11 and we reverse.

## I

## HISTORY OF THE CASE

In this case, the law was deployed as a weapon in a controversy for which it is ill-suited: a purely political dispute in the City of Los Angeles. The plaintiffs are residents and voters of the Fourteenth Council District of Los Angeles. They are, more than incidentally, strong political supporters of Councilman Arthur Snyder of that district. The nominal defendants are the City of Los Angeles and its city clerk. These defendants have no genuine interest in this litigation adverse to the plaintiffs.[1] The intervenors are likewise residents and voters of the Fourteenth District who, significantly, are strong political opponents of Councilman Snyder.

The plaintiffs were represented by the Los Angeles law firm of Iverson, Yoakum, Papiano and Hatch, who style themselves on this appeal as the "Real Parties In Interest." That firm also represents its own interests here. The intervenors were represented by attorneys from the Center for Law in the Public Interest and the Mexican American Legal Defense and Education Fund, Inc.

Councilman Snyder was returned by the voters to his councilmanic seat in April, 1983, after a hotly contested election. In

---

1. The city stipulated that it concurred in the allegations of the complaint and filed a notice of no opposition to the relief, *pendente lite*, requested by the plaintiffs.

December, 1983, a group of his constituents, including the present intervenors, commenced a process which they hoped would lead to his recall by the voters.

The recall process in the City of Los Angeles is defined by the charter of that city. Los Angeles City Charter § 290 *et seq.* It is commenced by publication of a Notice of Intention to Circulate a Recall Petition in a newspaper of general circulation in Los Angeles. *Id.* § 290(c). The proponents of the recall are charged under the city charter with this responsibility. After publication, petitions for recall of an office holder may be circulated, and if a sufficient number of valid signatures are obtained, a recall election is thereafter mandated. *Id.* § 290(g).

The impact of coexisting federal law on the recall process just described is central to this law suit. In 1975, Congress amended the Voting Rights Act, 42 U.S.C. § 1971 *et seq.* (1982), to establish bilingual election requirements for certain jurisdictions. 42 U.S.C. §§ 1973b(f), 1973aa–1a (1982).

Section 1973aa–1a(b) of the Voting Rights Act provides: "[N]o State or political subdivision shall provide registration or voting notices, forms, instructions, assistance, or other materials or information relating to the electoral process ... only in the English language if ..." the jurisdiction is subject to the bilingual provision of the Act. Los Angeles was at all times relevant to this law suit a jurisdiction subject to this provision of the Voting Rights Act. 28 CFR, Part 55 app. (1985). In covered jurisdictions, voting material must be furnished in the language of the minority group involved as well as in English. 42 U.S.C. § 1973aa–1a(c) (1982).

Against the background of this federal enactment and the requirements of the City Charter, intervenors caused a notice of intention to circulate recall petitions against Councilman Snyder to be published on December 2, 1983. The notices were published in English only.

On December 23, 1983, the City amended its Election Code so as to require all recall materials published or filed under City Charter Section 290(c) to be printed in English and a minority language. It appears that this ordinance, which was unanimously adopted, was introduced and passed specifically in response to the concerns of Spanish speaking citizens in the Fourteenth District who were faced with an impending recall of their councilman (Excerpt of Record 12, Exhibit B).

The December 23, 1983 ordinance was enacted after the publication of the notice of intention to circulate recall petitions against Councilman Snyder was completed, and during the circulation of recall petitions. Because of the ordinance, intervenors withdrew all circulating petitions, had new petitions prepared which were printed in English and Spanish, and recirculated the new, bilingual petitions. After signatures were obtained on the petitions, intervenors attempted to file them with the city clerk. The clerk refused to accept the bilingual petitions because the prior notice of intention to circulate them had been published only in English, and the new city ordinance required *all* recall materials to be printed in both English and Spanish.

Thereafter, on February 17, 1984, intervenors petitioned the California state court for a writ of mandate to compel the city clerk to accept their petitions. Councilman Snyder was permitted to intervene in the state court proceeding, but the present federal court plaintiffs were not. They appeared as *amicus curiae* in the state action. The city responded to the writ relying upon its own city ordinance and the Federal Voting Rights Act to justify its refusal to accept the petitions.

The state court found the recall petitions to be in substantial compliance with the city charter and the city ordinance, and found, without elaboration, that there was no violation of the Federal Voting Rights Act.

Both the city and Councilman Snyder appealed from the state court judgment, thereby staying the mandate under state law. The California court of appeals dis-

solved the stay upon application of the petitioners.

The present plaintiffs, *amicus* in the state proceeding, promptly filed the instant action against the city and its clerk in federal court alleging a violation of the Federal Voting Rights Act, and seeking injunctive relief against the city to bar its further processing of the recall petitions. Proponents of the recall were permitted to intervene to oppose the granting of preliminary injunctive relief to plaintiffs. The city filed no opposition to the interim relief requested. After a hearing, the district court denied the requested preliminary injunctive relief. It found that the plaintiffs could not show probable success on the merits because their Voting Rights claims were "totally frivolous" and "totally without merit."

Following the denial of plaintiffs request for a preliminary injunction, intervenors moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. Plaintiffs responded by purporting to dismiss the action pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure. Intervenors resisted by moving to vacate the purported dismissal on the ground that their own motion to dismiss under Rule 12(b)(6) was in fact a motion for summary judgment, making the voluntary dismissal provisions of Rule 41(a)(1) inapplicable. Intervenors also asked, for the first time, for sanctions.

Faced with this blizzard of motions, the district court, on May 21, 1984, (1) denied plaintiffs' motion to dismiss under Rule 41(a)(1); (2) granted intervenors' motion to vacate plaintiffs' motion to dismiss; (3) elected to treat intervenors' 12(b)(6) motion as a motion for summary judgment; and (4) continued the hearing on intervenors' motion for summary judgment and for sanctions until June 19, 1984. After argument on that date, the district court granted summary judgment for intervenors and

awarded the sanctions at issue on this appeal.[2]

The district court granted the intervenors' motion for summary judgment on the ground that, as a matter of law, there was no violation of the Voting Rights Act by intervenors because that Act, on its face, applies only to states and political subdivisions of states. The court held that the Voting Rights Act does not reach the private conduct of the intervenors herein in publishing the notice of intention to circulate a recall petition. As an alternative ground, the district court held the recall notice and petition process involved here to be unrelated to the act of *voting*. It construed the language "or other materials or information relating to the electorial process," 42 U.S.C. § 1973aa–1a(c) (1982), as not extending to the recall petition process because it is only a preliminary step "which might ultimately lead to the holding of an election to recall an elected official." *Zaldivar v. Los Angeles*, 590 F.Supp. 852, 855 (C.D.Cal.1984).

The district court then turned to the sanction request. It rejected the argument that Rule 11 sanctions require a showing of subjective bad faith. It articulated a test which it believed served the purpose of Rule 11: "[W]hether the plaintiff's action was so without factual and legal foundation that it can be considered frivolous or unreasonable." *Id.* at 856. On that basis, it imposed sanctions against the plaintiffs and their attorneys.

## II

## DISCUSSION

As we view the posture of this case on appeal, the judgment of the district court in granting summary judgment to the intervenors is not before us at this time. We may take judicial notice that the recall election initiated by intervenors against Councilman Snyder has been held and that he was retained in office.[3] The passage of

---

2. The decision of the district court is published at 590 F.Supp. 852 (C.D.Cal.1984).

3. *See United States v. Perez*, 769 F.2d 1336, 1340 (9th Cir.1985) (appellate court may take judicial notice of any fact of which a district court could

time and subsequent events have therefore mooted the controversy which gave rise to this litigation. All that remains is the issue of sanctions. Appellant raises the voting rights issue as one of the questions presented on this appeal and has fully briefed and argued that issue. However, as we view the present posture of this case, the only relevance of the voting rights issue is its bearing on the imposition of sanctions.

The sanctions at issue on appeal were imposed by the district court for a violation of Rule 11, Federal Rules of Civil Procedure. Liability for the sanction was imposed against both plaintiffs' counsel and the plaintiffs.

Rule 11 provides, in part:

Every pleading, motion, or other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated ... The signature of an attorney ... constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harrass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading,

motion, or other paper is signed in violation of this rule, the Court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

*Standard of Review*

 Appellate review of orders imposing sanctions under Rule 11 may require a number of separate inquiries. If the facts relied upon by the district court to establish a violation of the Rule are disputed on appeal, we review the factual determinations of the district court under a clearly erroneous standard. If the legal conclusion of the district court that the facts constitute a violation of the Rule is disputed, we review that legal conclusion *de novo*. Finally, if the appropriateness of the sanction imposed is challenged, we review the sanction under an abuse of discretion standard.[4]

Here, we focus upon the legal conclusion of the district court that the signature of plaintiffs' attorney to a complaint alleging a Voting Rights Act violation under the circumstances therein stated violated the attorney's Rule 11 certification. Our review is thus *de novo*.

take judicial notice); *Winpisinger v. Watson,* 628 F.2d 133, 138 n. 28 (D.C.Cir.) (court takes judicial notice of Senator Kennedy's primary victories), *cert. denied,* 446 U.S. 929, 100 S.Ct. 1867, 64 L.Ed.2d 282 (1980).

**4.** This circuit has not declared the appropriate Rule 11 standards of review in a published opinion since the Rule was amended in 1983. We adopt the standard herein stated to maintain consistency with our law in similar situations. *United States v. Associated Convalescent Enterprises, Inc.,* 766 F.2d 1342 (9th Cir.1985) (sanctions for violating 28 U.S.C. § 1927); *Optyl Eyewear Fashion Int'l. Corp. v. Style Co.,* 760 F.2d 1045 (9th Cir.1985) (same); *Fjelstad v. American Honda Motor Co.,* 762 F.2d 1334 (9th Cir.1985) (discovery sanctions); *Professional Seminar Consultants, Inc. v. Sino Am. Technology Exch.*

*Council, Inc.,* 727 F.2d 1470, 1472 (9th Cir.1984) (same); *Jensen v. Stangel,* 762 F.2d 815 (9th Cir.1985) (fees to prevailing defendant under 42 U.S.C. § 1988); *Western Federal Corp. v. Erickson,* 739 F.2d 1439, 1444 (9th Cir.1984) (fees for meritless litigation under the Securities Act of 1933).

The standards we adopt are consistent with those in other circuits, *Eastway Const. Corp. v. City of New York,* 762 F.2d 243 (2nd Cir.1985); *Davis v. Veslan Enterprises,* 765 F.2d 494 (5th Cir.1985); *Suslick v. Rothschild Securities Corp.,* 741 F.2d 1000, 1006 (7th Cir.1984), and follow those which we applied to Rule 11 prior to the 1983 amendments. *See, Anderson v. Allstate Insurance Co.,* 630 F.2d 677, 684 (9th Cir.1980); *Rhinehart v. Stauffer,* 638 F.2d 1169, 1171 (9th Cir.1979).

## The Legal Standard

At the outset we must adopt a standard against which alleged violations of Rule 11 are to be tested. This court has not done so since the Rule was amended.

■ First, we consider whether a finding of subjective bad faith by the signing attorney is necessary to the imposition of sanctions under the Rule. We hold that it is not and, therefore, reject plaintiffs' argument that sanctions are inappropriate here because the district court did not find counsel's actions to be taken in bad faith.

Prior to the 1983 amendments, Rule 11 was interpreted to require subjective bad faith by the signing attorney to warrant the imposition of sanctions. *See, e.g., Badillo v. Central Steel & Wire Co.*, 717 F.2d 1160, 1166 (7th Cir.1983); *Nemeroff v. Abelson*, 620 F.2d 339, 350 (2nd Cir.1980). This interpretation was compelled because the text of the former Rule was plainly subjective in its focus: "The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of *his knowledge, information, and belief,* there is good ground to support it...." Fed.R.Civ.P. 11 (1982) (emphasis added). Moreover, under the former Rule, sanctions against the signing attorney were reserved for a "willful violation of this rule...." *Id.*

The new text represents an intentional abandonment of the subjective focus of the Rule in favor of an objective one. The certificate now tests the knowledge of the signing attorney by a "reasonableness" standard. The former requirement of willfulness has been deleted. "The [new] standard is one of reasonableness under the circumstances. This standard is more stringent than the original good-faith formula and thus it is expected that a greater range of circumstances will trigger its violation." Fed.R.Civ.P. 11 advisory committee note.

The Advisory Committee notes make clear that Rule 11, as amended, is intended to be applied by district courts vigorously to curb widely acknowledged abuse from the filing of frivolous pleadings, and other papers. *Id.*[5] It is apparent that district courts have heeded the admonition of the drafters of the rules. The large number of reported opinions from those courts can only be a fraction of the number of instances in which sanctions have been imposed under the authority of recent rule amendments.

Our conclusion that subjective bad faith is not an element to be proved under present Rule 11 is consistent with the advisory committee's purpose to revitilize the Rule by encouraging the use of sanctions where appropriate. This conclusion is also supported by recent opinions in other circuits addressing the same question. *See, e.g., Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 253 (2nd Cir. 1985) ("Simply put, subjective good faith no longer provides the safe harbor it once did"). *See also* Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look*, 104 F.R.D. 181, 187 (1985) ("There is no room for a pure heart, empty head defense under Rule 11").[6]

We next consider the kind of conduct or neglect by counsel which may appropriately trigger sanctions under the Rule.

■ Rule 11 is not a panacea intended to remedy all manner of attorney misconduct occurring before or during the trial of civil

---

**5.** The amendments to Rule 11 must be viewed as only a part of a recent general effort by the Courts and the Congress to encourage the use of sanctions as a means of addressing delay and expense in civil proceedings caused by various inappropriate litigation tactics. Rule 16 was amended to authorize sanctions for delay caused by lack of preparedness at scheduling and pretrial conferences. Fed.R.Civ.P. 16(f). Delay and expense caused by excessive discovery practices, was addressed by a certifica-tion procedure similar to that found in Rule 11. Fed.R.Civ.P. 26(g).

**6.** Some courts continue to analyze Rule 11 violations under a bad faith standard. *See Nelson v. Piedmont Aviation Inc.*, 750 F.2d 1234, 1238 (4th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 2358, 86 L.Ed.2d 259 (1985); *Suslick v. Rothchild Securities Corp.*, 741 F.2d 1000, 1001 (7th Cir.1984).

cases. It does not repeal or modify existing authority of federal courts to deal with abuses of counsel under 28 U.S.C. § 1927 (1982) (an attorney who, in bad faith, "so multiplies the proceedings in any case" may be assessed excess costs, expenses, and attorneys fees) or under the court's inherent power to discipline attorney misconduct. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–67, 100 S.Ct. 2455, 2463–65, 65 L.Ed.2d 488 (1980). Nor is it properly used to sanction the inappropriate filing of papers where other rules more directly apply. For example, excessive discovery requests should be dealt with under Rule 26(g) rather than Rule 11, and the filing of inappropriate affidavits in support of, or in opposition to, motions for summary judgment should be considered under Rule 56(g), rather than Rule 11. To apply Rule 11 literally to all papers filed in the case, including those which are the subject of special rules, would risk the denial of the protection afforded by those special rules. *See Chipanno v. Champion International Corp.*, 702 F.2d 827, 831 (9th Cir.1983).

Rule 11 applies to the filing of a "pleading, motion, and other paper" in a civil action. The Rule requires that such a paper be signed. If it is not signed, the paper "shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant." The purpose of the signature, of course, is to fix responsibility upon a specific person for those matters that are the subject of the certificate.

The certificate is addressed to two separate problems, both of which have been identified as major sources of unnecessary litigation delay and expense: first, the problem of frivolous filings; and second, the problem of misusing judicial procedures as a weapon for personal or economic harassment.

In its opinion imposing sanctions here, the district court characterized plaintiffs' complaint as "totally frivolous." The court also noted that "plaintiffs appear to be ready and willing parties in an effort to stall the recall petition process initiated by Intervenors. Every attempt in state court to derail the recall process failed and plaintiffs made a last ditch effort in this court." *Zaldivar*, 590 F.Supp. at 857. The district court thus relied to some extent upon both prongs of the Rule 11 certificate, the frivolousness clause and the improper purpose clause. We consider briefly the essential elements of each.

#### 1. *The "Frivolousness" Clause*

As we have observed, the subjective intent of the pleader or movant to file a meritorious document is of no moment. The standard is reasonableness. The "reasonable man" against which conduct is tested is a competent attorney admitted to practice before the district court.

The Rule admits of no exceptions to the requirement that all reasonable attorneys will read a document before filing it in court. In practical effect, an obviously meritorious paper will go unchallenged, whether read or not. The force of the rule is to eliminate the defense of personal ignorance of defects in a paper challenged as unmeritorious.

The signing attorney also certifies that to the best of his knowledge, information, and belief formed after reasonable inquiry, the signed document is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. In the present case, no serious claim is made that the complaint is not supported by a foundation of facts. The certificate fails, if at all, under this prong of the rule because of counsel's certification that the facts gave rise to a legal right in the plaintiffs under "existing law" or a "good faith argument for the extension, modification, or reversal of existing law."

It is obvious from the text of the Rule that the pleader need not be correct in his view of the law. Thus the granting of a motion to dismiss the complaint for failure to state a claim, or the granting of a summary judgment against the pleader is not dispositive of the issue of sanctions.

The pleader, at a minimum, must have a "good faith argument" for his or her view of what the law is, or should be. A good faith belief in the merit of a legal argument is an objective condition which a competent attorney attains only after "reasonable inquiry." Such inquiry is that amount of examination into the facts and legal research which is reasonable under the circumstances of the case. Of course, the conclusion drawn from the research undertaken must itself be defensible. Extended research alone will not save a claim that is without legal or factual merit from the penalty of sanctions.

■ Courts have grappled in other contexts with the proper formulation of words that characterize an indefensible, meritless legal argument. We believe the district court correctly adopted and applied for purposes of Rule 11 sanctions the standard applicable for the award of fees to prevailing defendants in litigation under the civil rights acts. *See Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421–22, 98 S.Ct. 694, 700–01, 54 L.Ed.2d 648 (1977). Thus, we affirm that Rule 11 sanctions shall be assessed if the paper filed in district court and signed by an attorney or an unrepresented party is frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith.[7]

We accept this formulation fully aware that no combination of abstract words may correctly apply to every case. However, the rule for the payment of fees to prevailing defendants in litigation under the civil rights acts is well known to the federal courts and to the bar. We believe an acceptable degree of certainty over a subject matter which is inherently uncertain will be best achieved by applying the same test in Rule 11 sanctions cases.[8]

### 2. The "Improper Purpose" Clause

The second prong of the Rule 11 certification is that the signer represents that the paper filed "is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."

We view this prong as an extension of existing law found in 28 U.S.C. § 1927 (1982). That statute is burdened with several limitations. Sanctions under section 1927 may be imposed only against attorneys, and not parties; the conduct of the attorney must be in bad faith, thus excusing the blissfully ignorant filing of frivolous documents; and the *multiplication* of proceedings is punished, thus placing *initial* pleadings beyond its reach.

The improper purpose clause of Rule 11 is more comprehensive. A violation of this clause justifies sanctions against parties, as well as counsel; as we have shown, it reaches improper purposes based upon an objective standard;[9] and finally, it can be invoked if an *initial* pleading is signed for an improper purpose.

Because an element of harassment was detected by the district court in this case and may have accounted in part for its imposition of sanctions against plaintiffs and their counsel, it is necessary to examine the meaning of "harass" as used in Rule 11.

■ We believe the conduct forming the basis of the charge of harassment must

---

7. Elsewhere in this opinion, we use the single term "frivolous" as a short hand means of describing the rule which we state here.

8. The same standard is applied to the award of fees under the Securities Exchange Act of 1934, 15 U.S.C. § 78i(e) (1982), and the Securities Act of 1933, 15 U.S.C. § 77k(e) (1982).

9. The use of the words "improper purpose" admittedly can be construed to require intentional impropriety. The Rule does not compel such a constuction, however. The ease of alternative interpretations merely underscores the inherent ambiguity of the words "improper purpose." Under such circumstances we take guidance to the correct interpretation of the words from the Advisory Committee Notes, other decided cases and the views of respected commentators. The view is nearly unanimous that an "improper purpose" is to be tested by objective standards. *Eastway Construction v. City of New York*, 762 F.2d 243, 253 (2nd Cir.1985); Schwarzer, *Sanctions Under The New Federal Rule 11—A Closer Look*, 104 F.R.D. 181, 195–96 (1985).

do more than in fact bother, annoy or vex the complaining party. Harassment under Rule 11 focuses upon the improper purpose of the signer, objectively tested, rather than the consequences of the signer's act, subjectively viewed by the signer's opponent. In the present case, the district court noted that the issue raised by the plaintiffs in federal court had been rejected in a different case filed in state court. Without question, successive complaints based upon propositions of law previously rejected may constitute harassment under Rule 11.

A more difficult question of interpretation exists as to whether a pleading or other paper which is well grounded in fact and in law as required by the Rule may ever be the subject of a sanction because it is signed and filed for an improper purpose. In short, may an attorney be sanctioned for doing what the law allows, if the attorney's motive for doing so is improper? The Rule itself does not provide a clear answer to this question. The "well grounded in fact and warranted by existing law" clause is coupled with the "improper purpose" clause by the conjunction "and." By signing the pleading or other paper, the attorney certifies to both, thus suggesting that the two clauses are to be viewed independently.

■ For purposes of deciding this case, it is unnecessary to answer this difficult question in other situations.[10] We deal here with the signing of a complaint that initiates the action. We hold that a defendant cannot be harassed under Rule 11 because a plaintiff files a complaint against that defendant which complies with the "well grounded in fact and warranted by existing law" clause of the Rule.

### Did Plaintiffs' Counsel Violate Rule 11?

The basic question we must answer is whether the plaintiffs have an arguable claim under the Voting Rights Act. In addressing this question, we do not examine the complaint in the same manner as a court considering a Rule 12(b)(6) motion. Under the appropriate legal standard, we are concerned only with whether the complaint asserts a good faith argument for applying the Voting Rights Act under these circumstances, even if that legal argument may ultimately fail.

The 1975 amendments to the Voting Rights Act imposing the requirement of bilingual voting materials upon certain jurisdictions were based upon explicit Congressional findings that voting discrimination existed against certain minority citizens whose dominant language was other than English. 42 U.S.C. § 1973aa–1a(a) (1982). Congress determined that because of unequal educational opportunities, minority citizens suffered a continuing illiteracy in the English language that effectively excluded their participation in the electoral process when elections were conducted only in English. *Id.*

The Congress elected to remedy this condition by requiring voting materials to be made available in English and in the language of certain language minorities. 42 U.S.C. § 1973aa–1a(b) (1982). But the remedial policies do not apply nationally; rather, they apply only if 5% or more of the citizens of voting age within a state or political subdivision are members of a single language minority, and if the illiteracy rate of such persons is higher than the national average. *Id.*

If a jurisdiction meets this test, "any registration or voting notices, forms, instructions, assistance, or other materials or information relating to the electoral process" provided by that jurisdiction shall be in the applicable minority language as well as English. 42 U.S.C. § 1973aa–1a(c) (1982).

The district court was satisfied that even a "cursory reading of [this] statute would indicate to a reasonable person that there was no basis for bringing this lawsuit."

---

**10.** The filing of excessive motions, for example, even if each is well grounded in fact and law, may under particular circumstances be "harassment" under Rule 11 or sanctionable under some other provision of law, a question we need not decide here.

*Zaldivar* 590 F.Supp. at 857. It found the complaint to be frivolous because the notice of recall was published by the intervenors and not by a state or political subdivision, and because publication of a notice to circulate a recall petition was not information relating to the electoral process.

We believe a plausible, good faith argument can be made by a competent attorney to the contrary. The Voting Rights Act is a remedial statute. Sections 4 and 5 of the 1965 Act, 42 U.S.C. §§ 1973b, 1973c (1982), have been construed liberally to achieve the Act's objectives. For example, Section 5 of the Act subjects changes in "any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting" to prior approval by the Attorney General. 42 U.S.C. § 1973c (1982). That language, arguably less sweeping than that found in section 1973aa–1a, has been interpreted to support the view that "Congress intended to reach any state enactment which altered the election law of a covered State in even a minor way." *Allen v. State Board of Elections*, 393 U.S. 544, 566, 89 S.Ct. 817, 832, 22 L.Ed.2d 1 (1969). A good faith argument can be made that the bilingual provision of the Act are to be given a similar, expansive interpretation.

Giving section 1973aa–1a the "broadest possible scope", *Id.* at 567, 89 S.Ct. at 832–33, we have no difficulty in concluding that a competent attorney, after reasonable inquiry, could argue in good faith that a notice of intention to recall an office holder provides information relating to the electoral process. The election itself is merely the culmination of that process. It includes those acts that a citizen must perform to establish his eligibility as a voter, as well as those acts that a candidate must perform to place his name on the ballot. The range of conduct "relating to the electorial process" includes, for example, compliance by a would-be voter with statutes regulating registration and compliance with other statutes to place a name or an issue on the ballot. That the state or a political subdivision has mandated by law that certain preliminary steps be taken by the would-be voter, the candidate for office, or the proponents of an issue does not in any sense absolve the governmental entity of its responsibility under the Voting Rights Act. Such compelled acts are far removed from those voluntarily undertaken by a candidate, such as the printing of campaign literature.[11]

Here, plaintiffs' counsel correctly argued that the purpose of the bilingual provisions of the Act is to end the language disability of some citizens to full participation in the electoral process; and to this end, the Act requires information relating to the electoral process to be brought to their attention in both English and the minority language. Counsel argued that the political issue here was the recall of a city councilman. The city ordinance required a notice, consisting of a brief statement of reasons for the recall, to be published and to be served on the office holder, who was afforded the opportunity of publishing a response before recall petitions could be circulated. Counsel noted that approximately 75% of the population in the councilmanic district had Spanish surnames. Counsel argued that voters literate only in Spanish would be deprived of the same opportunity as voters literate in English of considering the written arguments for and against the recall of their councilman prior to considering signing a recall petition if the Voting Rights Act were held not to apply.

Intervenors, and the district court below, relied upon *Gerena-Valentin v. Koch*, 523 F.Supp. 176 (S.D.N.Y.1981) as authority contrary to the position argued by plain-

---

**11.** The argument that a recall notice is only a preliminary step to voting and therefore is unaffected by the bilingual provisions of the Act is without merit. The Act requires all "notices, forms, instructions, assistance, or other materials or information relating to the electoral process" to be in the minority language. The Act does not exempt information or material, compelled by statute, which is preliminary to voting, but essential if an election is to occur. The argument that a necessary step, such as the publications of a notice to recall an office holder, is within the scope of section 1973aa–1a is one which can be made in objective good faith.

tiffs. That case denied a preliminary injunction sought by a candidate for council in the City of New York. The candidate argued that the city violated section 4(e) of the Voting Rights Act (relating to conditioning the right to vote upon an ability to read and understand the English language) because the City "failed to provide bilingual aid in the petition process." *Id.* at 177. Based upon this failure, the court stated that the plaintiffs "have not substantiated a case of discrimination" and that "[t]he failure to provide bilingual petitions does not in itself deprive the Hispanic community of their right to vote...." *Id.*

The facts of *Gerena-Valentin* are not recited in sufficient detail to convince us of its relevance to the instant case. However, even if it were squarely in point, a single district court opinion from another circuit cannot alone be sufficient to justify sanctions for failure to adhere to its holding. Such a penalty would "chill an attorney's enthusiasm or creativity in pursuing factual or legal theories" in an area of the law which cannot be regarded as settled. Fed. R.Civ.P. 11 advisory committee note.

The district court was not persuaded by plaintiffs' arguments. Under the proper legal standard, we do not review the court's decision on the Voting Rights issue for legal error. We hold only that plaintiffs' argument is plainly not frivolous under the first prong of Rule 11.[12]

One final issue needs to be considered. Was the filing of this action in federal court, after the rejection in State court of its legal premise, an act of "harassment" by plaintiffs, justifying Rule 11 sanctions under the second prong of the legal standard?

We may assume that plaintiffs were at least as concerned with defeating the recall attempt against Councilman Snyder as with

the right of spanish speaking voters to read election materials in spanish, and filed their claim intending to achieve a political purpose. But the political inspiration for the federal law suit does not necessarily mean that the action is "improper" within the meaning of Rule 11. Much of the redistricting litigation under the Equal Protection Clause has been inspired by those with a transparent political interest. Whatever the true purpose of the litigant, the vindication of voting rights secured by the fourteenth amendment cannot be deemed impermissable harassment.

■ For a claim of harassment to be sustained on the basis of successive filings, there must exist an identity of parties involved in the successive claim, and a clear indication that the proposition urged in the repeat claim was resolved in the earlier one.

■ Here, the state court action was initiated by the present intervenors against the City of Los Angeles. The present plaintiffs appeared only as *amicus* in that action. As such, the plaintiffs are not bound by the state court judgment, or to issues litigated therein. *Carden v. Otto,* 37 Cal.App.3d 887, 892, 112 Cal.Rptr. 749, 752 (1974) ("A person not a party or privity to a party to an action is not bound by or entitled to claim the benefits of an adjudication upon any matters decided in the action"). Accordingly, plaintiffs had an arguable right to litigate in state court, but their arguable right to do so in federal court is much stronger. The essence of the state court action was to seek a judicial declaration that the Voting Rights Act had no application to the publication of a notice to circulate recall petitions in Los Angeles, and to compel the city clerk of that city to accept recall petitions as valid, notwith-

---

**12.** The bilingual provisions of the Voting Rights Act are intended to aid single language minority citizens in the exercise of their right to vote. These provisions are not to be followed or overlooked whenever it appears to be in the interest of a candidate to do so. In this litigation, the application of the bilingual provisions delayed a recall attempt of a non-hispanic office holder. In the next case, identical provisions may aid an incumbent office holder of Spanish descent from recall efforts by a non-hispanic minority element. Only by interpreting the Act evenly for the benefit of single language *voters,* rather than *candidates,* will the objectives of the Act be achieved.

standing the English only text of the publication. Arguably, the state court was without jurisdiction to hear such a claim. Actions by states to declare statutes and ordinances to be outside the reach of the Voting Rights Act must be filed in district courts. 42 U.S.C. § 1973aa–1a(d) (1982). The same is true for actions filed by private parties under section 5, 42 U.S.C. 1973c (1982), and no reason is apparent why a similar rule should not apply with respect to the bilingual provisions. Challenges to the Act itself must be filed in the District Court for the District of Columbia. *Reich v. Larson,* 695 F.2d 1147 (9th Cir.), *cert. denied,* 461 U.S. 915, 103 S.Ct. 1894, 77 L.Ed.2d 284 (1983).

We need not decide the jurisdictional issue here. We determine in this case only that the filing of the instant action in federal court, after dismissal of similar legal contentions raised in an earlier and related state proceeding in which plaintiffs were not parties, was not improper harassment justifying the imposition of sanctions under Rule 11.

CONCLUSION

The judgment imposing sanctions against plaintiffs and their counsel is REVERSED. Each party shall bear its own costs on appeal.