## PHILADELPHIA GEAR CORPORATION

v.

## SWATH INTERNATIONAL, LTD. and SWATH EUROPE, LTD.

No. CIV.A.01–CV–0998.

United States District Court, E.D. Pennsylvania.

April 22, 2002.

Kevan F. Hirsch, Kaplin, Stewart, Meloff Reiter & Stein, PC, Blue Bell, PA, for plaintiff.

Joseph P. Dougher, Obermayer, Rebmann, Maxwell & Hippel, LLP, Philadelphia, PA, Nicole Finitzo, Charlene Q. Kalebic, Schiff, Hardin & Waite, Lake Forest, IL, Donald R. Harris, Joel T. Pelz, Jenner & Block, LLC, Chicago, IL, for defendants.

## MEMORANDUM AND ORDER

KAUFFMAN, District Judge.

This action concerns a dispute between Philadelphia Gear Corporation ("PGC"), a manufacturer of power transmission equipment, and Swath International, Ltd. ("Swath"),[1] a builder of marine vessels, over two malfunctioning marine gear drives sold by PGC to Swath. Now before the Court are Swath's Motion to Dismiss Count III of PGC's First Amended Complaint and PGC's Motion for Leave to File a Second Amended Complaint. Although Swath does not oppose PGC's request to amend, it asks that the Court order PGC to pay Swath's attorneys' fees as a cond

---

1. Swath Europe, Ltd. is alleged to be the parent company of Swath International. (Compl. ¶ 3.)

tion to allowing the amendment. For the following reasons, the Court will grant both Motions, but will not require PGC to pay Swath's attorneys' fees.

## I. *Background*

On January 29, 2002, the Court issued a Memorandum and Order that, *inter alia*, granted Swath's motion to dismiss Count III of PGC's Complaint. In its opinion, the Court held that Count III failed to allege fraudulent misrepresentation with sufficient particularity and failed to allege a duty supporting a claim for negligent misrepresentation. Accordingly, the Court dismissed Count III without prejudice and granted PGC leave to amend its Complaint.

PGC's attorney informed counsel for Swath that he would be filing an amended complaint in accordance with the Court's Memorandum and Order. (Hirsch Decl. ¶ 2.) On February 18, 2002, PGC's counsel prepared the First Amended Complaint. (Hirsch Decl. ¶ 5.) The next day, he printed the document, proofread it, and instructed his secretary to add the date and a certificate of service. (Hirsch Decl. ¶¶ 5, 6.)

"For reasons which she cannot recall," instead of printing out the amended complaint, his secretary instead retrieved the original Complaint from the computer system, changed its title to "First Amended Complaint," and added the date and a certificate of service. (Hirsch Decl. ¶ 6.) PGC's counsel then signed the document without proofreading it again. (Hirsch Decl. ¶ 7.) Thus, the allegations of the pleading filed with the Court on February 19, 2002 were inadvertently identical to those in the original Complaint.

On March 11, 2002, Swath filed an Answer and this Motion to Dismiss, arguing that Count III should again be dismissed, this time with prejudice, because "despite the Court's clear and definite instructions, PGC failed to make any changes to its original Complaint except to change the title from 'Complaint' to 'First Amended Complaint.'" (Mem. Supp. Mot. Dismiss at 3.) When counsel for PGC received a copy of the Motion to Dismiss on March 18, 2002, he sent an electronic mail message to Swath's counsel:

I am not sure why the mail took so long, but this morning I received Swath's Answer and Counterclaim and its Motion to Dismiss Count III of the First Amended Complaint. From that motion, I take it that you have been asking yourselves why [I] filed the same pleading with a change of title. The answer is that I am a victim of sophisticated word-processing, self-editing of documents on the system and my own inattention. I write to inquire whether we can reach agreement on resolving the error on my part....

Having finished banging my head against the wall, I turned to how the situation might be rectified. Ordinarily one could file an amended pleading in response to a Rule 12 motion as Rule 15 allows an as of course amendment until a responsive pleading is filed. You have, however, also answered the First Amended Complaint, which eliminates that option. I could, of course, respond to the Rule 12 motion by explaining the erroneously filed pleading and cross-moving for leave to file a second amended complaint. I would like to avoid that for obvious reasons and therefore request that we stipulate to allow PGC to file the amended pleading under the "consent of the adverse party clause" of Rule 15(a).

I have attached the first amended complaint I intended to file for review and consideration. As you will see, there are a few changes to the facts and Count III is very different from the original

pleading. You may still want to move to dismiss Count III as amended, but it now rests on different facts and a different legal theory. As I believe a motion for leave to amend would be successful under these circumstances and there will not be a need for you to substantially rewrite your answer, please let me know if you will stipulate to the amendment.

I truly apologize for any inconvenience. Should you have any questions, please do not hesitate to call and I will sheepishly try to answer.

(Mot. Leave File Second Am. Compl. Ex. C.)

During a conference call on March 25, 2002, counsel for Swath agreed to the amendment, but only on condition that PGC pay Swath $12,750, the fees allegedly incurred in responding to the First Amended Complaint. (Hirsch Decl. ¶ 9.) Counsel for PGC refused. (Hirsch Decl. ¶ 9.) On March 28, 2002, the day PGC's response to the Motion to Dismiss was due, its counsel sent another electronic mail message to Swath's counsel requesting consent to amend. (Hirsch Decl. ¶ 11.) In response, Swath's counsel demanded $6,000, allegedly the fees incurred in filing the Motion to Dismiss and the anticipated fees for revising Swath's Answer, in exchange for its consent. (Hirsch Decl. ¶ 11.) Again, PGC's counsel declined, and that day filed the Motion for Leave to File a Second Amended Complaint.

Swath responded to this Motion on April 11, 2002. In its Response, Swath states that it has "no objection to the filing of a Second Amended Complaint as long as it is made whole financially for the error of PGC's counsel and is given ample time to respond to that pleading." (Resp. Mot. Leave File Second Am. Compl. at 2.)

## II. *Analysis*

■ When an attorney files a document with the Court, he or she has a clear obligation to read it first. In fact, until 1993, Federal Rule of Civil Procedure 11 provided that a signature constituted "a certificate by the signer that the signer has read the pleading, motion, or other paper . . . ." Fed.R.Civ.P. 11 (repealed 1993). Although the current version of Rule 11 no longer expressly includes this requirement, its obligations "obviously require that a pleading, written motion, or other paper be read before it is filed or submitted to the court." Fed.R.Civ.P. 11 advisory committee's note.

■ There are "no exceptions to the requirement that all reasonable attorneys will read a document before filing it in court." *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830 (9th Cir.1986). Attorneys must always keep in mind that computers are not infallible, *see, e.g.*, Marvin Krasny, *What Happens When Computer Error Leads to Bar Dates Swooshing By?*, Legal Intelligencer, Oct. 19, 2001, at 5, nor are secretaries, paralegals, or other lawyers. PGC's counsel thus has no excuse for his admitted failure to read the First Amended Complaint carefully before signing it and causing it to be filed. An attorney signing a motion or pleading must make absolutely certain that it is the document he or she intends to file.

■ Moreover, there is merit to Swath's argument (Resp. Mot. Leave File Second Am. Compl. at 4) that requiring PGC to pay for its lawyer's error could "create a sufficient economic incentive to minimize such practices in future cases." *Envision Realty, LLC v. Henderson*, 182 F.Supp.2d 143, 144 (D.Me.2002). Nevertheless, when an error has caused no prejudice because it is immediately obvious and "clearly clerical," the imposition of such a penalty would be questionable. *Ault v. Hustler*

*Magazine, Inc.,* 860 F.2d 877, 884 (9th Cir.1988) (reversing an order imposing Rule 11 sanctions for a "careless[ ]" computer error).[2]

■ Swath claims that it was prejudiced by having to answer the First Amended Complaint and file a Motion to Dismiss.[3] (Resp. Mot. Leave File Second Am. Compl. at 6.) Moreover, Swath argues, "the refusal of PGC's counsel to agree to a reasonable condition to Swath's consent to the filing of the Second Amended Complaint . . . has resulted in the expenditure of even more time and money by Swath as well as a needless expenditure of judicial resources." (Resp. Mot. Leave File Second Am. Compl. at 3.)

Swath is correct that the Motions currently pending before the Court represent the "needless expenditure of judicial resources." It is the Court's view, however, that any prejudice to Swath from allowing PGC to file a Second Amended Complaint would be a result of the actions of Swath's counsel, not PGC's counsel.

Because the law is a profession in which civility must be an essential element, the Court agrees with PGC's suggestion that "a simple telephone call to counsel for PGC would have disclosed the error, avoided the motion to dismiss Count III presently pending before the Court and eliminated the need for PGC to request leave to file a second amended pleading." (Mem. Supp. Mot. Leave File Second Am. Compl. at 4–5.) In response, Swath states as follows:

> PGC's counsel attempts to blame his mistake on Swath's counsel, claiming that Swath's counsel should have con-

tacted him to ask him if he had made a mistake. This is patently absurd. Given the importance that is associated with a pleading in Federal court and the time and attention with which most lawyers scrutinize a Federal pleading before it is filed, it is a reasonable assumption that a lawyer has, at the very least, read the document which he is required to sign under Rule 11 of the Federal Rules of Civil Procedure. Swath's counsel reasonably assumed that the document entitled "First Amended Complaint," which was formatted differently, bore a different date and word processing number, was accompanied by a new certificate of service, and was signed by PGC's lawyer, had been filed intentionally by PGC. Since the substantive allegations had not changed, Swath's counsel assumed that PGC had elected to stand on its pleadings. In good faith, Swath therefore prepared an answer and motion to dismiss in response to that filing. PGC's counsel should not be permitted to blame Swath's counsel for his negligence.

(Resp. Mot. Leave File Second Am. Compl. at 6.) Although Swath's contention is technically correct, it ignores the code of civility that once distinguished our profession.

"Civility is courtesy, dignity, decency and kindness." Robert C. Josefsberg, *Civility,* International Academy of Trial Lawyers Dean's Address, March 30, 1996, at 2. Moreover, "[c]ivility is not inconsistent with zealous advocacy." *Id.* "[C]ivility is the trademark of a winner." *Id.* at 12. In adopting a Code of Civility, the Pennsylva-

---

2. In any event, the Court notes that even if the award of attorneys' fees were appropriate, the amount demanded appears excessive.

3. If Swath would be prejudiced by allowing PGC to file a Second Amended Complaint, it

is within the Court's discretion to order PGC to pay Swath's costs as a condition to the amendment. *See* 6 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1486.

nia Supreme Court recently stated that "[t]he hallmark of an enlightened and effective system of justice is the adherence to standards of professional responsibility and civility.... Uncivil or obstructive conduct impedes the fundamental goal of resolving disputes in a rational, peaceful and efficient manner." *In re: Adoption of Code of Civility*, No. 258, Supreme Court Rules, Docket No. 1, Code of Civility at 1 (Pa. Dec. 6, 2000).

The controversy that is the subject of this Memorandum could have been entirely avoided with the exercise of the slightest bit of civility. Although the Court does not condone, and certainly does not encourage, errors such as the one made by PGC's counsel, it finds that the conduct of Swath's counsel was unnecessarily harsh under all the circumstances and should also be discouraged. Simply put, it is not in keeping with the concept of civility to take unfair advantage of an adversary's obvious and non-prejudicial mistake.

PGC's First Amended Complaint was so clearly the product of a clerical error that the Court rejects Swath's contention that it filed the Motion to Dismiss "[i]n good faith."[4] In the interest of civility, Swath's counsel should have called PGC's counsel to alert him of the obvious mistake and agree on a way to correct it as expeditiously and economically as possible. Instead, Swath chose to file a Motion to Dismiss. Because Swath had no need to respond to PGC's pleading in this totally inflexible manner, there is no basis for its request that PGC be required to pay its self-inflicted attorneys' fees.[5]

The principles of civility are not mere ideals; they have practical benefits, as well. In over thirty-eight years of trial practice, the undersigned learned that lawyers who treat other lawyers with civility can expect the same when they inevitably find themselves in similar situations. In the long run, such behavior not only is totally consistent with zealous advocacy, but also inexorably promotes the interests of justice.

### III. *Conclusion*

For the foregoing reasons, the Court will dismiss Count III without prejudice, grant PGC's Motion for Leave to File a Second Amended Complaint, and deny Swath's request for attorneys' fees. An appropriate Order follows.

### *ORDER*

**AND NOW,** this 22nd day of April, 2002, **IT IS ORDERED** as follows:

1. Swath's Motion to Dismiss Count III of PGC's First Amended Complaint (docket no. 19) is **GRANTED.** Count III is **DISMISSED WITHOUT PREJUDICE.**

2. PGC's Motion for Leave to File a Second Amended Complaint (docket no. 22) is **GRANTED.** PGC shall file the Second Amended Complaint attached as Exhibit A to its Motion (there titled "First Amended Complaint") within ten (10) days from the receipt of this Order.

3. Swath shall answer or otherwise respond to the Second Amended Com-

---

4. Not one of the allegations had been changed from the original Complaint.

5. The Court reminds counsel that the Federal Rules of Civil Procedure "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1. Accordingly, the Rules permit the flexibility required to achieve the civility lacking in both our society and our profession.

plaint within thirty (30) days of the date it is served.