REINHARDT, Circuit Judge,
concurring.
The plain meaning of the language of the Voting Rights Act compels me to concur in the result reached by the majority, because neither the State of California nor the County of Orange “provided” the recall petition at issue in this case. Rather, as the majority holds, the petition was funded, drafted, printed, and circulated — i.e., provided — by the private proponents of the recall, although in conformance with the relevant provisions of the California Elections Code. In view of the unambiguous provisions of 42 U.S.C. § 1973aa-la(c), that is all the majority needs to say. Instead of stopping when it is ahead, however, the majority continues on and seeks to support its decision on practical and policy grounds. I write separately because I disagree with the additional justifications it advances. Also, I wish to note my agreement with the dissent regarding an important issue not reached by the majority: There can be no doubt that recall petitions “relate to” the electoral process.
I strongly disagree with the majority’s statement that its construction of the statute, in addition to being compelled by the statutory language, is supported by “sound practical reasons.” See maj. at 1052. To the contrary, I believe that the result we are required to reach is not consistent with the objectives of the Voting Rights Act and that common sense and practicality would support Congress’s extension of the Act to cover a process that was initially omitted, inadvertently or otherwise, but that is integral to the electoral system. The majority contends that a contrary reading of the statute would (1) “distort” the Voting Rights Act by “applying] it in a situation for which it clearly is not intended,” and (2) have a chilling effect on the petition process because “[t]he expense and trouble of fulfilling the translation requirements are likely to deter proponents who otherwise would launch petitions.” Maj. at 1053. I fully agree with Judge Preger-son’s dissent in its rejection of both contentions.
*1054 First, requiring that recall petitions be provided in a manner that ensures that as many citizens as possible are able to participate in the recall process would not, as the majority asserts, “distort” the Voting Rights Act. As Judge Pregerson notes in dissent, the purpose of the relevant provision of the Act is to guarantee that language minorities have the ability to exercise fully their fundamental democratic rights. It would be difficult to imagine how fostering the electoral participation of such minorities by allowing them to read and understand relevant voting materials would distort that purpose. To the contrary, encouraging large numbers of previously excluded but eligible voters to participate in an important aspect of the electoral system would be wholly consistent with the purposes of the Act.
The majority also suggests that there was no reason for Congress to cover recall petitions because, although proponents have no legal duty to present language minorities with petitions, they “have an incentive to gather as many signatures as they can.” Maj. at 1052. That this case is now before us is evidence of how wrong the majority is. Sponsors of petitions, including those who provided the petitions in the present case, have a strong incentive not to precipitate heated debate or angry confrontations when attempting to collect signatures on controversial or divisive measures.[1] In recent years, California has had a number of highly controversial initiatives, some successful, designed to curtail the rights of minorities.[2] Opponents of these initiatives have accused the proponents of using deceptive advertising and solicitation techniques in their efforts to collect signatures and support. The proponents are said to have represented these measures as being innocuous or even as advancing or protecting minority rights. Whether or not such accusations are well-founded, the ability to obtain signatures for a petition is aided when the communities adversely affected by the initiative or, in this case, the recall, are not confronted directly by the petition in a form in which they are able to perceive its true meaning and potential impact.
More important, it is irrelevant whether recall proponents have an incentive to exclude eligible voters. The pertinent question is whether language minorities are in fact kept from meaningful or actual participation in the electoral process because they cannot read the voting materials. Here, the contention is that Spanish-speaking voters were duped into signing a petition to recall a Latino elected official whom they supported. Thus, although they participated in the electoral process in some bare sense, their participation cannot be characterized as informed or meaningful. Also, many other non-English speakers were likely prevented from participating in the process in any manner as a result of their inability to read or understand the petition. Accordingly, although the law may not currently require recall proponents to translate the petitions they provide, English-only petitions plainly serve to exclude eligible and registered citizens from an important part of the voting process. Surely such a phenomenon is not consistent with the purpose of the Voting Rights Act.[3]
*1055 Second, I disagree with the majority’s assertion that mandating translation of recall petitions in language-diverse municipalities would chill the recall process. As Judge Pregerson’s dissent points out, the minimal cost of translating less than a page of text can hardly be deemed a substantial burden on the proponents of a recall. To this I would add that the majority seems to assume that implementing measures promoting fairness in the electoral process is a less important value than adding items to the ballot that are placed there in violation of the spirit of the Voting Rights Act. I disagree. There are many provisions designed to regulate recall and other elections that may in practice affect the number of measures or individuals who qualify for a place on the ballot, including provisions that limit the right to raise and spend funds; require proponents to obtain a certain number of signatures, sometimes in the hundreds of thousands; and restrict the arguments or explanations that may be offered in the qualifying papers.[4] To the extent that such rules reduce the number of candidates, issues, or recalls, the electorate is not chilling rights or preventing participation in the electoral process. Rather, it is favoring electoral fairness and other similarly important democratic values. Specifically, even if the proponents of recalls or initiative measures are required to bear some additional financial cost, the translation of recall petitions into the languages spoken by significant minorities (and, in some cases, majorities) would enhance the recall procedure: The translations would allow and encourage otherwise-excluded, eligible voters to play a part in the process of placing items on the ballot, and thus would significantly ad-vanee the objectives of the Voting Rights Act.
As to the issue the majority does not reach, I would hold, as would the dissent, that California recall petitions are voting materials “relating to the electoral process.” 42 U.S.C. § 1973aa-la(c). First, courts have routinely, and in a variety of contexts, construed the term “relating to” broadly. See, e.g., Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 397-98, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (construing a “relating to” clause broadly in the arbitration context); Luu-Le v. INS, 224 F.3d 911, 916 (9th Cir.2000) (recognizing that the term “relating to” is to be construed broadly in the immigration context); Tachiona v. United States, 386 F.3d 205, 220 (2d Cir.2004) (noting that the term “relating to,” “when used in statutes,” is construed broadly to mean “connection with,” “reference to,” or “association with”). Further, we have previously squarely rejected the defendants’ argument that the preliminary nature of recall petitions permits them to escape coverage by the Voting Rights Act: “The argument that a recall notice is only a preliminary step to voting and therefore is unaffected by the bilingual provisions of the Act is without merit.” Zaldivar v. City of Los Angeles, 780 F.2d 823, 833 n. 11 (9th Cir.1986). At least one state apparently agrees: Massachusetts pays the cost of producing recall petitions and, pursuant to the Voting Rights Act, provides translations in minority languages. See Delgado v. Smith, 861 F.2d 1489, 1497 n. 7 (11th Cir.1988) (acknowledging that Massachusetts complies with the Act by translating its initiative and referendum petitions). In addition, not only has the Attorney Gener *1056 al expressly acknowledged that petitions are qualifying voting materials, see 28 C.F.R. § 55.19(a), but common sense dictates that, where a petition is a necessary predicate to an election and is governed by exacting state election statutes, the petition “relates to” the voting process of that state. In light of our obligation to construe the Voting Rights Act broadly so as to effectuate its remedial purposes, see Tcherepnin v. Knight, 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967), I see no reasonable argument that recall petitions are not voting materials relating to the electoral process in California.
As Judge Pregerson notes in his dissent, the Voting Rights Act was designed to apply “throughout the electoral process.” See H.R.Rep. No. 102-655 (1992). Regrettably, the plain and inescapable meaning of the statutory language requires me to conclude that, with respect to the issue before us, the Act falls short of its objective. Thus, reluctantly, I must concur. I need not, however, join the majority in its assertion that Congress’s omission constitutes sound public policy.

. Signature gatherers frequently station themselves outside of supermarkets, discount stores, movie theaters, or public arenas where numerous people of varying backgrounds are present.

. Examples include Proposition 209, the self-labeled "California Civil Rights Initiative,” and Proposition 187, the so-called "Save our State” initiative which related to undocumented persons.

.It is true, as the majority points out, that citizens do not have a right to have recall, initiative, or candidate petitions presented to them for their consideration. However, when *1055 persons are excluded from an important part of the electoral process because of their race, religion, ethnicity, or language minority status, the values inherent in both the Constitution and the Voting Rights Act are seriously undermined.

. In addition, fees are imposed for the certification of petitions, refundable should the sponsors be successful in placing the issue on the ballot. CAL. ELEC. CODE § 9004.