**In re VANTAGE STEEL CORPORATION,
Debtor.**

**NON–FERROUS METALS (U.S.A.),
INC., Plaintiff,**

v.

**VANTAGE STEEL
CORPORATION, Defendant.**

**Bankruptcy No. 70028.
Adv. No. 89–5986.**

United States Bankruptcy Court,
S.D. New York.

April 16, 1991.

---

Charles Weintraub, New York City, for James E. O'Neill, III, Donald M. Collins and Stradley Firm.

Stradley, Ronon, Stevens & Young by John P. O'Dea, James E. O'Neill, Donald M. Collins, Philadelphia, Pa., for Vantage.

Whitman & Ransom by Paul M. Brown, Norman N. Kinel, New York City, for Non–Ferrous Metals.

## MEMORANDUM DECISION DETERMINING TO IMPOSE CERTAIN SANCTIONS UNDER BANKRUPTCY RULE 9011

PRUDENCE B. ABRAM, Bankruptcy Judge.

On October 23, 1989, this court issued an order to show cause (the "OSC") in which it directed Vantage Steel Corporation (the "Debtor") and its law firm, Stradley Ronon Stevens & Young (the "Stradley Firm"), as well as James E. O'Neill, III ("O'Neill") and Donald M. Collins ("Collins") of the Stradley Firm, to show cause why sanctions should not be imposed on any or all of them under Bankruptcy Rule ("BR") 9011 in connection with the Debtor's attempt to remove an arbitration to this court. Concurrent with the issuance of this decision, the court has made a report and recommendation to the District Court that it issue an order remanding the arbitration on the unopposed praecipe filed by the Debtor. A copy of the report and recommendation is annexed hereto as Exhibit 1.[1]

For the reasons which follow, the court imposes sanctions in the form of an award of reasonable attorney's fees in the amount of $2,500 to be paid to Non–Ferrous Metals (U.S.A.), Inc. ("Creditor"), $500 of which is to be paid by the Debtor and $2,000 of which is to be paid by O'Neill. In addition, the court sanctions O'Neill to advise the Bankruptcy Court in the Eastern District of Pennsylvania of this decision, the order and the report and recommendation. The court withdraws the OSC as to the Stradley Firm and declines to impose sanctions on Collins. If the District Court follows the undersigned's recommendation to issue an order of remand, that portion of the OSC relative to subject-matter jurisdiction will be moot and therefore it is not further discussed.

### STATEMENT OF FACTS

The Removal Application was signed by James E. O'Neill of the Stradley Firm and verified by Marvin F. Stabler, the vice-president of the Debtor. Only O'Neill signed the Answer and Counterclaim and the Praecipe. Collins signed the Letter Response.

The court incorporates by reference the findings of fact in its report and recommendation to the District Court. Familiarity with those findings and the report and recommendation is assumed.

### PRAECIPE INSUFFICIENT TO AVOID SANCTIONS

■ The Debtor has intimated that this court lost its power to impose sanctions when the Debtor filed the Praecipe. As explained in the report and recommendation.

1. Any defined terms used in this decision have the meanings ascribed in the report and recommendation.

tion to the District Court, the Praecipe was not self-executing. Since the Debtor needed court approval to withdraw the Removal Application, the Debtor and its counsel could not avoid the possible imposition of sanctions under BR 9011 by the filing of the Praecipe.

It is therefore unnecessary for this court to consider whether the United States Supreme Court's holding in *Cooter & Gell v. Hartmax Corp.*, 496 U.S. ——, 110 S.Ct. 2447, 2455, 110 L.Ed.2d 359 (1990) ("*Cooter*") that sanctions may be imposed after dismissal should be given retroactive effect.[2]

## BR 9011 AND FRCP 11

BR 9011(a) provides:

"The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harrass, to cause delay, or to increase the cost of litigation. * * * If a document is signed in violation of this rule, the court on motion or on its own initiative shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee."

As BR 9011 is modeled on Rule 11 of the Federal Rules of Civil Procedure ("FRCP"), the cases construing FRCP 11 are a proper guide to its interpretation and application.

## NO SANCTIONS SHOULD BE IMPOSED ON LAW FIRM

■ After the court issued the OSC and in late 1989, the United States Supreme Court ruled that, as a matter of proper construction of FRCP 11, sanctions may be imposed only on the attorney who signed the pleading and may not be imposed on the attorney's law firm. *See Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989). Since BR 9011 parallels FRCP 11, *Pavelic & LeFlore* controls the proper construction of BR 9011 on this point. Therefore the court withdraws its OSC as to the Stradley Firm.[3]

## DETERRENCE IS A CENTRAL PURPOSE OF IMPOSITION OF SANCTIONS

About the purpose of FRCP 11, the United States Supreme Court has said:

"It is now clear that the central purpose of Rule 11 is to deter baseless filings in District Court and thus, consistent with the Rule Enabling Act's grant of authority, streamline the administration and procedure of the federal courts. * * * Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well-grounded in fact, legally tenable, and 'not interposed for any improper purpose.' An attorney who signs the paper without such a substantiated belief 'shall' be penalized by 'an appropriate sanction.' Such a sanction may, but need not, include payment of the other parties' expenses. * * * Although the rule must be read in light of concerns that it will spawn satellite litigation and chill

---

**2.** Prior to the Supreme Court's decision in *Cooter*, the Second Circuit had adhered to the position that sanctions could not be imposed after a plaintiff voluntarily discontinued an action. *See, e.g., Johnson Chemical Co., Inc. v. Home Care Products, Inc.*, 823 F.2d 28, 31 (2d Cir. 1987).

**3.** The individual signer versus the entity question could also be raised with respect to the

term party. This court concludes that party means just that—the named party to the action and not the corporate officer who signs on its behalf. In its most recent decision in FRCP 11, the U.S. Supreme Court assumes this interpretation of the term party. *See Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, —— U.S. ——, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991) ("*Business Guides*").

vigorous advocacy * * * *any interpretation must give effect to the rule's central goal of deterrence."* (emphasis added)

*Cooter,* 496 U.S. at ——, 110 S.Ct. at 2454.

■ In order to determine if a reasonable inquiry has been made, it is necessary to focus on counsel's conduct at the time of submission of the signed document. *See International Shipping Company, S.A. v. Hydra Offshore, Inc.,* 875 F.2d 388, 390 (2d Cir.1989) (*"Hydra"*). Counsel's after the fact attempt to bolster its legal arguments is insufficient to defeat the imposition of sanctions. *Hydra,* 875 F.2d at 390–91. It is no longer enough for an attorney to claim that he acted in good faith, or that he personally was unaware of the groundless nature of an argument or claim. *See Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 253 (2d Cir.1985) (*"Eastway"*). "[T]he language of new Rule 11 explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed. Simply put, subjective good faith no longer provides the safe harbor it once did." *Eastway,* 762 F.2d at 253. *See also Cancellotti v. Fay,* 909 F.2d 15 (1st Cir.1990).

In its recent decision in *Business Guides,* the U.S. Supreme Court held that represented parties can be sanctioned under FRCP 11 in addition to, or instead of, the attorney. The signing party is under an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing and the applicable standard is one of reasonableness under the circumstances. 111 S.Ct. at 933. The U.S. Supreme Court held that FRCP 11 imposes an objective standard of reasonable inquiry on represented parties who sign papers or pleadings. 111 S.Ct. at 934–35.

The second prong of FRCP 11 permits imposition of sanctions when the paper filed is found to have been interposed for an improper purpose. One court has held that the conduct forming the basis of the charge of harassment must do more than in fact bother, annoy or vex the complaining party. A finding of harassment must focus upon the improper purpose of the signer, objectively tested. *See Zaldivar v. City of Los Angeles,* 780 F.2d 823, 831–32 (9th Cir.1986). "Without question, successive complaints based upon propositions of law previously rejected may constitute harassment under Rule 11." *Id.,* 780 F.2d at 832. However, the court in *Zaldivar* went on to conclude that if a complaint complies with the "well grounded in fact and warranted by existing law" provision, it cannot constitute harassment under FRCP 11. *Id.* at 832. "If a competent attorney would find no basis for a legal argument, then it does not interfere with zealous advocacy to penalize the repetitious assertion of that argument." *In re TCI Limited,* 769 F.2d 441, 447 (7th Cir.1985).

## NON–REMOVABILITY OF AN ARBITRATION

The legal merits of the Removal Application depend on 28 U.S.C. § 1452(a), which provides that a party may remove to the bankruptcy court

> "any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."

■ The leading treatise on bankruptcy flatly states that an arbitration is not removable under 28 U.S.C. § 1452(a) because it is not a civil action. See 1 *Collier on Bankruptcy* (15th Ed.1989), Par. 3.01[5][d]. None of the few reported cases on 28 U.S.C. § 1452 support the proposition that an arbitration is a civil action as that term is used in the statute. *See In re Adams Delivery Service, Inc.,* 24 B.R. 589 (9th Cir. BAP 1982) (court found an administrative agency proceeding non-removable under the predecessor to 28 U.S.C. § 1452); *In re Internationale Resort and Beach Club,* 36 B.R. 189 (Bankr.D.S.C.1983) (an arbitration is not a civil action capable of removal).

The provisions of BR 9027, which govern the procedural aspects of removal to the bankruptcy court, all reflect the assumption that any removed action will be pending in a state or federal court at the time of removal even though 28 U.S.C. § 1452(a) does not contain any forum description, although one forum (i.e., the U.S. Tax Court) from which removal may not be made is listed.[4] For example, BR 9027(a) provides for the application for removal to be filed in the bankruptcy court for the district and division "within which is located the state or federal court where the civil action is pending"; and BR 9027(d) provides that removal of the claim or cause of action is effected on the filing of a copy of the removal application with the clerk of the court from which the claim or cause of action is removed.

The bankruptcy removal statute is contained in the same chapter of Title 28 as the general federal removal statute, 28 U.S.C. § 1441, and it bears substantial similarity to it even though the bankruptcy removal statute does not precisely mirror the language of § 1441 and some of the principles utilized in resolving disputes under the two statutes differ. Section 1441(a) does contain a forum description and refers to removal of "any civil action brought in a state court".

The Debtor has urged in defense of removal a line of cases which permit removal of arbitrations based on a functional analysis of the tribunal involved.[5] In particular, the Debtor points to *Tool & Die Makers v. General Electric Co.*, 170 F.Supp. 945 (E.D.Wisc.1959) (*"Tool & Die"*) and *Corwin Jeep Sales & Service, Inc. v. American Motors Sales Corp.*, 670 F.Supp. 591 (M.D.Pa.1986) (*"Corwin Jeep"*). At the outset, it must be noted that neither case actually deals with arbitration.

In *Tool & Die*, the court determined that an unfair labor practice complaint filed by several labor organizations representing employees before the Wisconsin Employment Relations Board was removable under the federal removal statute. The issue was whether the fact that the State proceedings were initiated as state unfair labor practice charges before a state administrative body rather than as common law actions in the state court defeated the right of removal. The *Tool & Die* court concluded that it did not.

"In the construction of Federal statutes dealing with proceedings in State courts, it is clear that the Supreme Court of the United States has adopted a functional rather than a literal test. Thus the question of whether a proceeding may be regarded as an action in a State court within the meaning of the [removal] statute is determined by reference to the procedures and functions of the State tribunal rather than the name by which the tribunal is designated.

" * * *

"State laws * * * which depart from traditional and customary usages and procedures, such as here, where the state has apparently divided the judicial function between a Board which hears the evidence and declares the facts and the law, and a State court which enforces its rulings, cannot operate to defeat the right of a litigant otherwise entitled to have his cause heard in Federal court." 170 F.Supp. at 950–51.

---

4. BR 9027 could be successfully challenged as exceeding the rule-making authority *only if* the addition of the phrase "in state or federal court" were found to be a substantive change from the statute itself. *See* 28 U.S.C. § 2075 ("The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11. Such rules shall not abridge, enlarge, or modify any substantive right. * * *"). As the discussion which follows in the text of this decision makes clear, the phrase "in state or federal court" is nothing more than the addition of words which

are inherent in the meaning of the term "civil action". *See also* FRCP 2 ("There shall be one form of action to be known as 'civil action'.")

5. Since these cases were not referred to in the Letter Response, it would appear they were found subsequent to the filing of the Removal Application and fail to satisfy the prior inquiry standard of BR 9011. *See* discussion of *Hydra, supra.* Nevertheless, it is appropriate to consider the cases in discussing the legal merits of the Removal Application in order that the legal analysis be complete.

In *Corwin Jeep,* the court considered whether the Pennsylvania State Board of Vehicle Manufacturers, Dealers and Salespersons was a court for the purposes of removal. The court adopted the *Tool & Die* functional approach and concluded that the Board was acting in a judicial rather than an administrative capacity in the matter before it and thus removal was proper.

*Edelson v. Soricelli,* 610 F.2d 131 (3d Cir.1979) (*"Edelson"*), a case discussed in *Corwin Jeep* but not cited by the Debtor, directly considers the application of the functional approach doctrine to an arbitration. The majority in *Edelson* declined to permit removal of a compulsory arbitration of a medical malpractice claim pending in the state-created Arbitration Panels for Health Care.

The court found that arbitration of a medical malpractice claim was a condition precedent to entry into the state judicial system. The court determined that the state's decision to experiment with arbitration in the medical malpractice context had to be respected as a legitimate exercise of state power.

> "Far from discouraging arbitration prior to litigation in federal court, the federal legislative and judicial mandates frequently favor arbitration. For example, 9 U.S.C. § 3 allows parties to a contract providing for arbitration to have federal court proceedings stayed pending arbitration of contractual disputes." 610 F.2d at 139.

There was a strong dissent. The dissent reviewed the procedures specified by the state law and concluded, contrary to the majority, that the medical arbitration panel functioned as a judicial entity.

"Pennsylvania has not sought to eliminate the right to recovery but has channeled all plaintiffs to a special state judicial forum thinly disguised as an administrative agency. * * * I believe the panel is a procedural device for allocating cases within the State of Pennsylvania. * * * [T]he panel is actually another court of the state." 610 F.2d at 145, 147.

It is apparent that even the dissent in *Edelson* does not suggest that the functional approach would allow removal of a contractual arbitration. Indeed, quite the contrary, the functional approach emphasizes comparing the tribunal from which removal is sought with a judicial tribunal.[6] The Arbitration is pending before the AAA, a private, not a state-created, tribunal that is not part of any state-created statutory scheme for resolving disputes.

In 1956, the United States Supreme Court held in *Bernhardt v. Polygraphic Co.,* 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199, that arbitration touches on substantive rights and therefore must be governed by local law under the doctrine established in *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

> "The federal court enforces the state-created right by rules of procedure which it has acquired from the Federal Government and which therefore are not identical with those of the state courts. Yet, in spite of that difference in procedure, the federal court enforcing a state-created right in a diversity case is, as we said in *Guaranty Trust Co. v. York,* 326 U.S. 99, 108 [65 S.Ct. 1464, 1469, 89 L.Ed. 2079 (1945)], in substance 'only another court of the State.' * * * For the remedy by arbitration, whatever its merits or shortcomings, substantially affects the

---

6. There is an old line of federal cases dealing with New York consensual arbitrations which analyzed the issue under the "civil action" phrase and therefore are particularly useful precedent. In order to understand the importance of these cases to the proper analysis of 28 U.S.C. § 1452(a), it is necessary to know that until New York adopted the Civil Practice Law and Rules ("CPLR") in 1962, a contractual arbitration demand commenced a type of special proceeding in the state court. See *Chariot Textiles Corp. v. Wannalancit Textile Co. (Kute Kid-* *dies Coats, Inc.),* 21 A.D.2d 762, 250 N.Y.S.2d 493 (1st Dept.1964). Nevertheless, the federal courts consistently declined to substitute themselves for the arbitration tribunal and limited their involvement to supervision of the arbitration and enforcement of any award. See *Davenport v. Proctor & Gamble Manufacturing Co.,* 241 F.2d 511 (2d Cir.1957); *Minkoff v. Scranton Frocks, Inc.,* 172 F.Supp. 870 (S.D.N.Y.1959); and *Lummus v. Commonwealth Oil Refining Company,* 195 F.Supp. 47 (S.D.N.Y.1961).

cause of action created by the State. *The nature of the tribunal where suits are tried is an important part of the parcel of rights behind a cause of action. The change from a court of law to an arbitration panel may make a radical difference in ultimate result.* 350 U.S. at 202–03, 76 S.Ct. at 276 (emphasis added).

The Debtor admits to attempting to remove the Arbitration in order to effect a change in the fundamental nature of the tribunal. The Letter Response stated "The arguments in favor of the Bankruptcy Court being the proper place for the determination of controversies involving the Debtor would seem doubly persuasive when those controversies were subject to 'rough justice' which is the absolute most which can be expected from such panels."

## BANKRUPTCY POLICY AND ARBITRATION

Since the adoption of the Bankruptcy Code in 1978, there have been numerous bankruptcy decisions on arbitration from courts of all levels. During the period in which the two removal applications were filed, the Debtor's own counsel, the Stradley Firm, was representing an entity who was seeking to be allowed to arbitrate its claims against a Chapter 11 debtor. See *Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149 (3d Cir.1989).[7] Despite the absence of any precedent, the Debtor has urged that bankruptcy policy warrants adopting an interpretation of civil action as used in the bank-

ruptcy removal statute that would permit removal of a contractual arbitration.

The Debtor begins by urging that it is the general policy of the Bankruptcy Code to centralize controversies relative to the debtor and the estate in the bankruptcy court. From this general and uncontrovertible statement the Debtor then argues that Congressional policy would be evaded because a creditor could simply bring a matter before an arbitration panel rather than before a state or federal court. This argument is sheer nonsense. The automatic stay provided by Bankruptcy Code § 362(a)(1) operates to stay the continuation of a judicial, administrative or other action or proceeding against the debtor that was commenced before the commencement of the case or to recover a claim against the Debtor that arose before the commencement of the case. Therefore, at the moment the Debtor filed its Chapter 11 case, the Creditor was barred by the automatic stay from continuing the Arbitration or otherwise attempting to recover on its pre-petition claim against the Debtor.

To the extent that there was any disagreement about the effect of the bankruptcy filing on the Arbitration and the scope of the automatic stay under the circumstances,[8] the Debtor could and should have made application to the bankruptcy court responsible for its Chapter 11 case for appropriate relief. Alternatively, the Debtor could have removed the District Court Action to the bankruptcy court and asked the bankruptcy court to reconsider the district court's determination to remit all matters to arbitration in light of the bankruptcy filing.[9]

---

7. In its decision in that case, the Third Circuit extensively reviewed the case law and policy questions and concluded that as a result of recent Supreme Court decisions that a trustee must arbitrate its claims against a third party if arbitration is specified in the contract underlying the suit. In doing so, it overruled its own recent precedent that took the view that arbitration was subject to the discretion of the bankruptcy court.

8. The Creditor might have been in a position to pursue the Arbitration as a matter of defense if the Debtor were continuing its litigation on the other five contracts on the grounds that a debtor may not assert the automatic stay to prevent

a party which it is suing from defending itself. *See, e.g., In re Bohack (Bohack Corp. v. Borden, Inc.)*, 599 F.2d 1160 (2d Cir.1979) (Bankruptcy Act); *In re Johns–Manville Corp., (Commercial Union Insur. Co. v. Johns–Manville Corp.)*, 31 B.R. 965 (D.C.S.D.N.Y.1983); *In re Wedtech Corp.*, 87 B.R. 279 (Bankr.S.D.N.Y.1988).

9. An arbitration is distinct from an action in state or federal court dealing with issues respecting arbitrability, enforcement of the award and the like. For example, in New York, which is the state in which this bankruptcy court is located, a special proceeding may also be commenced in the state court to bring before the state court any controversy arising in the arbi-

In a Chapter 11 case, all creditors must file proofs of claim in order to participate in the case, unless their claims have been scheduled by the debtor. *See* BR 3003. It is the bankruptcy court which customarily determines the allowability of claims. The Debtor could have readily focused the arbitration issue between itself and the Creditor in the home bankruptcy court by simply objecting to the Creditor's claim. The creditor would then be required to decide whether to request that the claims be arbitrated. Prior to the Third Circuit's decision in *Hays,* as the Stradley Firm well knew, the creditor had an uphill battle to be allowed to continue an arbitration as a manner of liquidating its claim against a debtor. *See In re Monge Oil Corp.,* 83 B.R. 305 (Bankr.E.D.Pa.1988).

In a flight of fancy, the Letter Response argues that the Arbitration "dangles like a vermiform appendix—going nowhere, useless, but capable of unanticipated mortal mischief." This argument fails to acknowledge another of the express provisions of the Bankruptcy Code. Upon confirmation of a plan of reorganization, Code § 1129 would permanently enjoin continuation of the Arbitration just as it would enjoin continuation of a lawsuit.

## AMOUNT OF SANCTIONS

■ It is the Removal Application itself which warrants the imposition of sanctions. Both the Debtor and O'Neill signed that document. It is the document from which all other activity in this matter flowed. The Removal Application affirmatively states that the Arbitration is a removable civil action, a statement which as discussed above, could not have been made if a reasonable inquiry had been made.

The Letter Response, which was signed by Collins, does not purport refer to any particular case or other legal authority and the hyperbole and inadequate reasoning contained in it are facially obvious. Assuming that sanctions can be imposed on the signer of a letter [10], the court concludes that sanctions should not be imposed on Collins because the Letter Response, while close to the borderline of acceptable argumentation, plainly was cast as an attorney's opinion of what the law should be. Whatever burden it caused is minute in comparison to the burden imposed by the Removal Application itself.

Despite its own extensive review of the law which exceeded that briefed by either the Debtor or the Creditor, the court has detected no argument under current law supporting the Removal Application and has found no principled policy grounds on which the Removal Application could be justified as a request for an extension of existing law, whether using a functional approach, as the Debtor and its counsel urges, or otherwise.[11] Nowhere in the response to the OSC has the Debtor stated what inquiry it made before signing the Removal Application nor has Debtor's counsel attested to what research they did before signing the Petition. Less than fifteen minutes would have been required to locate the relevant section in *Collier on Bankruptcy* and ascertain that the contemplated action was contrary to black letter law. In addition, the Debtor and its counsel had the benefit of the Creditor's brief on the issue in connection with the prior

---

tration. *See* CPLR Sec. 7502(a). The Federal Arbitration Act similarly allows the commencement of an action in the federal district court for the purpose of supervising an arbitration.

Such a supervision action would be removable to the bankruptcy court because it is a civil action. Indeed, in the present case, the Debtor had the option to remove the District Court Action to the bankruptcy court but choose not to do so for some reason.

As this court noted at oral argument on the OSC, it is unclear whether the district court should have exercised any jurisdiction with respect to the Arbitration in light of the provisions of the Federal Arbitration Act which appear to limit district court supervision of arbitrations to arbitrations within the territorial jurisdiction of the particular district court.

10. B.R. 9011 applies to every "petition, motion and other paper served or filed" in a case. Since the Letter Response was delivered to the court and a copy delivered to the Creditor's counsel it would appear to be an "other paper" that was served and/or filed.

11. Interestingly, in the Letter Response, Collins denies making an argument for the extension of existing law.

removal attempt. In response to the OSC, the Debtor offered two non-bankruptcy cases on removal (*Tool & Die* and *Corwin Jeep*, discussed *supra*) which do not deal with arbitration and three bankruptcy cases,[12] all of which deal with arbitration but none of which deal with removal. Singly or together the policy arguments and case authorities fail to support removability of an arbitration.

Neither the Debtor nor its counsel have offered any explanation of why they choose to file a new removal application in light of the serious substantive challenges made to the prior removal application. The only one of the prior challenges that was corrected by the new removal application was the one which challenged the prior removal attempt as improper because the Arbitration was not pending in the district to which removal was made. The court concludes that the Removal Application was so fatally flawed under existing law that the Debtor and O'Neill, both of whom signed it, must be found not to have made the reasonable inquiry into the basis for the Removal Application required by BR 9011 before signing it. Despite the intense consideration that has been given to arbitration in bankruptcy cases, no body of case law has developed which would support the raising of the issue through removal of the arbitration itself to the bankruptcy court under 28 U.S.C. § 1452(a). Nor based on federal precedents is there any prospect that such a body of case law could develop. It is apparent that expanding the "envelope" in the manner suggested by the Debtor is wholly unnecessary to the proper administration of the Bankruptcy Code and moreover would unnecessarily interfere with long-standing and extensively developed doctrines respecting federal courts. The goal of deterrence will not be satisfied unless the court imposes sanctions on a signer who files a pleading so poorly researched and lacking in merit as the Removal Application.[13]

It is also appropriate to impose sanctions under the improper purpose clause on both the Debtor and O'Neill as they recommenced the same adversary proceeding by removal without apparently reexamining their course of conduct and determining that additional and significant grounds existed for recommencement. This court must reluctantly conclude that the lack of willingness to defend and pursue the chosen course of conduct when questioned by this court can only be explained by the conclusion that the Removal Application was interposed for an improper purpose and intended to harass the Creditor and increase its cost of litigation. This conclusion becomes even more inescapable since realignment of the parties might have salvaged at least the counterclaims and could have brought the arbitration issue before this court.[14]

Monetary sanctions in the form of reasonable attorneys' fees are appropriate. The Creditor has sought $20,000 which is the amount of its total fees which it states is directly attributable to the Debtor's two attempts to remove the Arbitration. In *Business Guides*, the U.S. Supreme Court

---

12. In *In re Brookhaven Textiles, Inc. (Debtor v. Avondale Mills, Inc.)*, 21 B.R. 204 (Bankr.S.D.N.Y.1982), the bankruptcy court held that it was not required to surrender its jurisdiction so as to permit a contract dispute to go to arbitration. In *Allegaert v. Perot*, 548 F.2d 432 (2d Cir.1977), a case decided under the former Bankruptcy Act, the court declined to require a trustee to arbitrate his claimes under the securities law and the Bankruptcy Act. In *Al–Cam Development Corp.*, 99 B.R. 573 (Bankr.S.D.N.Y.1989), the bankruptcy court upheld the trustee's right to elect to arbitrate a claim belonging to the estate even though the other party sought to have the dispute resolved by the bankruptcy court.

13. Nor does the possibility, unused by the Debtor, that realignment of the parties, see footnote 10, could have conferred jurisdiction on the bankruptcy court over the counterclaims suggest that the Removal Application itself had any legal merit.

14. The Debtor styled itself as the defendant in this adversary proceeding. It is, of course, the plaintiff in so far as it asserts counterclaims. If only the removed portion of the adversary proceeding were dismissed, then the Debtor could have sought to realign itself as the plaintiff and to convert the counterclaims into a complaint. Had the Debtor done so the arbitration issue would have come before this court if the Creditor had sought to have this court refer the Debtor's claims to arbitration.

stated that sanctions are not substitutes for tort damages and are not to reward parties who are victimized by litigation. 111 S.Ct at 934. Thus, this court should limit its award of attorneys' fees to only those occasioned by the Removal Application. In order to prevent satellite litigation in this case, the court has estimated that the creditor's counsel expended fifteen hours in preparing three letters (the first is five pages exclusive of attachments, the second is one page and the third is two pages), a five page affidavit with exhibits and a court appearance. At a reasonable hourly rate of $200 per hour, that computes out at $2,500. *Compare In re Nicfur-Cruz Realty*, 50 B.R. 162, 166–68 (Bankr.S. D.N.Y.1985) (Reasonable attorneys' fees to secured creditor cannot be gauged only by actual time spent but must also consider value of work product to accomplish appropriate end sought).

The court imposes $2,000 of this amount on O'Neill.[15] Because the defect in the Removal Petition was a legal one it is appropriate to impose the major burden of the sanctions on the attorney, who is the one responsible for the legal expertise. In addition, any sanction imposed on the Debtor burdens its creditors.

In addition to this monetary sanction, the court finds it appropriate to impose an additional sanction since the Debtor's creditors, rather than the Debtor, bear the burden of counsel's fees for this ill-fated litigation. The court sanctions O'Neill to advise the bankruptcy court handling the Debtor's case of this decision, the report and recommendation and accompanying order. That will enable that court to take the futility of the Removal Application into proper account in determining the reasonableness of any fee request made by the Stradley Firm.

As to the imposition of sanctions on the Debtor, this court holds that it can impose sanctions on the Debtor. Because the impropriety of the Removal Application depends heavily on legal analysis, it might be argued that imposition of sanctions directly on the Debtor would be inappropriate because the Debtor was entitled to rely on the competency of its counsel. However, the Debtor must be held to have been on actual notice that the Removal Application should be carefully scrutinized for legal sufficiency since the prior removal petition had been challenged and withdrawn. Allocating $500 of the total sanction to the Debtor is appropriate. It gives due weight to the respective responsibilities of Debtor and its counsel for the Removal Application.

A separate order has been signed.

## ORDER IMPOSING SANCTIONS UNDER BR 9011 AND GRANTING OTHER RELIEF

WHEREAS, the court has this day issued its *Memorandum Decision Determining to Impose Certain Sanctions Under Bankruptcy Rule 9011;* and

WHEREAS, an order is required to effectuate the *Memorandum Decision;* and good and sufficient cause appearing, it is now therefore

ORDERED, sanctions in the form of an award of reasonable attorney's fees in the amount of $2,500 be, and they hereby are, awarded to Non–Ferrous Metals (U.S.A.), Inc.; and it is further

ORDERED, $2,000 of this amount be, and it hereby is, imposed on James E. O'Neill, Esq.; and it is further

ORDERED, $500 of this amount be, and it hereby is, imposed on Vantage Steel Corporation; and it is further

ORDERED, that each of the sanctioned parties be, and they hereby are, directed to

---

**15.** This court believes the imposition of sanctions in this case is an object lesson in the difficulties counsel faces when representing parties on opposite sides of the same issue. While there is frequently no ethical bar to such representations, they can force counsel into contortions to present issues in such a way as to preclude the possibility of conflicting rulings. Here the purposes counsel has said it sought to achieve could have been achieved through a more direct route, such as making an objection to the creditor's claim. However, that would have required counsel to seek a ruling, i.e., no arbitration on claim, directly contrary to the ruling it was seeking from the Third Circuit, i.e., claim must be arbitrated.

pay the amount of the sanction within fifteen (15) days of the date of entry of this order by means of a check made payable to Non–Ferrous Metals (U.S.A.), Inc. and delivered to Norman N. Kinel, Esq. of Whitman & Ransom; and it is further

ORDERED, that as an additional sanction, James E. O'Neill, Esq., be, and he hereby is, directed within fifteen (15) days of the date hereof to provide a copy of this court's memorandum decision, the report and recommendation and this order to the bankruptcy judge in the Bankruptcy Court for the Eastern District of Pennsylvania responsible for handling the Vantage Steel Corporation case under cover of a letter, with a copy to the undersigned, explaining that the documents are being forwarded pursuant to order of this court; and it is further

ORDERED, that it be, and it hereby is, ordered that no sanction shall be imposed on Donald M. Collins, Esq.; and it is further

ORDERED, the court's order to show cause of October 23, 1989, be, and it hereby is, withdrawn to the extent it directed the parties to show cause why the court should not impose sanctions on Stradley, Ronon, Stevens & Young; and it is further

ORDERED, that the court's order to show cause of October 23, 1989, be, and it hereby is, dismissed without prejudice as prospectively moot in so far as it raises an issue as to subject-matter jurisdiction.

1. 28 U.S.C. § 1452(a) provides that a party may remove to the bankruptcy court
   "any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."

2. The Creditor had sought to arbitrate its claim for damages in the amount of $500,435.50 plus interest, which it stated to be the unpaid purchase price due from the Debtor on three separate contracts pursuant to which the Debtor bought and received quantities of silicon metal and aluminum billets.

EXHIBIT 1

REPORT AND RECOMMENDATION TO THE DISTRICT COURT ON PRAECIPE SEEKING REMAND OF REMOVED ARBITRATION

PRUDENCE B. ABRAM, Bankruptcy Judge.

By means of an application for removal filed on July 27, 1989 (the "Removal Application"), Vantage Steel Corporation (the "Debtor"), a debtor-in-possession in a Chapter 11 case pending in the Eastern District of Pennsylvania, purported to remove an arbitration (the "Arbitration") to the bankruptcy court in this district pursuant to 28 U.S.C. 1452(a).[1] The Arbitration had been commenced pre-petition by Non–Ferrous Metals (U.S.A.), Inc. (the "Creditor") before the American Arbitration Association ("AAA") in New York City, Case No. 13–199–0987–88.[2] The Debtor, which styled itself as the defendant in the caption on the Removal Application, filed an answer and counterclaim along with the Removal Application.[3]

In late September 1989, the Debtor submitted for filing a document it called a praecipe (the "Praecipe")[4] requesting leave to withdraw the Removal Application. Thereafter the undersigned issued an order to show cause which, *inter alia*, raised the issue of whether the court has subject-matter jurisdiction over this adversary proceeding. The Creditor does not oppose remand.

The undersigned hereby submits to the District Court its report and recommenda-

3. A removed action becomes an adversary proceeding governed by the adversary proceeding rules found in Part VII of the Bankruptcy Rules ("BR"). See BR 7001(10).

4. The term "praecipe" is not one commonly used in federal practice. It has the meaning of commanding another to do something, such as issue a writ. See, Williman, *Legal Terminology* (1986) at 91; Webster's New International Dictionary, 2nd Edition (1930) (Definition of praecipe); and 62 Am.Jur.2d, Process, § 5 at 789 ("The application addressed to the clerk of the court for the issuance of the summons is termed a 'praecipe.' ")

tion in accordance with BR 9027(e).[5] For the reasons set forth below, the undersigned recommends that the District Court issue an order of remand.

### STATEMENT OF FACTS

By letter dated August 11, 1989, the undersigned requested the Debtor's counsel to provide support for the removability of an arbitration since on initial review it did not appear that an arbitration is a removable civil action under 28 U.S.C. § 1452(a).

In a letter response dated September 1, 1989 (the "Letter Response"), the Debtor's counsel stated that the Debtor sought to remove the Arbitration to the bankruptcy court

"so that it may become part of the proposed overall litigation * * * [in the Chapter 11 case]. Without relief from the automatic stay this arbitration proceeding dangles like a vermiform appendix—going nowhere, useless, but capable of unanticipated mortal mischief. Clearly the general policy of the Bankruptcy Reform Act of 1978 was to expand the jurisdiction of the Bankruptcy Court to embrace all controversies relevant to the administration of the estate and the possible reorganization of the Debtor (with only narrowly defined exceptions). * * * It was, and is the position of the Debtor that Congressional policy could not be evaded by simply bringing actions before an arbitration panel rather than before a State or Federal Court. The arguments in favor of the Bankruptcy Court being the proper place for the determination of controversies involving the Debtor would seem doubly persuasive when those controversies were subject to the 'rough justice' which is the absolute most which can be expected from such panels.

"Certainly the Debtor was not unaware of the possibility that Rule 9027 could be read with mathematical logic but it believes it has reason to argue that the policy of inclusion with which the Bankruptcy system is imbued more than justifies a more liberal reading of that Rule. Indeed the term 'civil action' is, as your letter indicates, only properly applicable to an action to which the Federal Rules of Civil Procedure apply and not to state court litigation. Thus there is some contradiction even within the first sentence of 9027(a)(1) and some liberality of interpretation is inescapable."

Thereafter by letter dated September 11, 1989, counsel for the Creditor informed the court that the Debtor had attempted to remove the Arbitration to the Bankruptcy Court in the Eastern District of Pennsylvania pursuant to an application for removal dated May 12, 1989. The Creditor had filed a motion in that court on July 3, 1989 seeking to dismiss that removal of the Arbitration on a number of grounds, including the non-removability of an arbitration. The Debtor did not file a response to the Creditor's motion but rather withdrew the application for removal, apparently without opposition from the bankruptcy court.

The Creditor's counsel further advised that pre-petition and on or about June 2, 1988, the Debtor had instituted an action against the Creditor in the United States District Court for the Eastern District of Pennsylvania, Civil Action No. 88–4411 (the "District Court Action") in which the Debtor sought recovery on five contracts between the parties. Thereafter and in August 1988 the Creditor commenced the Arbitration on three other contracts. The Creditor also moved for a dismissal or stay of the District Court Action on the ground

5. BR 9027(e) provides as follows:

"*Remand.* A motion for remand of the removed claim or cause of action shall be filed with the clerk and served on the parties to the removed claim or cause of action. Unless the district court orders otherwise, a motion for remand shall be heard by the bankruptcy judge, who shall file a report and recommendation for disposition of the motion. The clerk shall serve forthwith a copy of the report and recommendation on the parties. Within 10 days of being served with a copy of the report and recommendation, a party may serve and file with the clerk objections prepared in the manner provided in Rule 9033(b). Review by the district court of the report and recommendation shall be governed by Rule 9033."

that the five contracts contained arbitration provisions. The Debtor opposed that motion on the grounds that the Debtor had not agreed to arbitration, that New York was not the proper forum for an arbitration and that it had not been properly served with a demand for arbitration. On November 29, 1988, one day before the Debtor filed its Chapter 11 petition, the District Court entered an order granting the Creditor's motion to stay the District Court Action and denying the Debtor's motion to stay the Arbitration.

No affidavit or memorandum of law in support of the Praecipe was filed. Although the Praecipe does not state any reason for the request, it is evident that it was filed in response to the undersigned's Letter although the Debtor has never conceded that the Arbitration was not removable.

On October 23, 1989, which was after the Praecipe was filed, this court issued its own order to show cause (the "OSC") in which it directed the Debtor to show cause why the Arbitration should not be dismissed for lack of subject matter jurisdiction and sanctions should not be imposed under BR 9011.[6] The OSC also questioned whether the Removal Application was timely.[7] Concurrent with the making of this report and recommendation, the undersigned has issued its decision on the OSC in which it has determined to impose sanctions under BR 9011 on the Debtor and one of its attorneys for the filing of the Removal Application. A copy of the decision is annexed hereto as Exhibit A. [Editor's Note: pp. 889–90 herein]

## DISCUSSION

### The Praecipe Should Be Treated as a Motion for Remand and Is Not Self–Executing

This court recommends that the Praecipe be treated as a motion for remand under BR 9027(e). See *Williams v. Williams,* 427 F.Supp. 557, 558 n. 1 (D.Md.1976) (Pleading styled as motion to dismiss petition for removal treated as motion for remand). Although the Debtor appears to have taken the position that it withdrew the Removal Application by filing the Praecipe, the very nature of a Praecipe is that it seeks to command action by another. See Footnote 1. In this case, the action that is commanded is the withdrawal of the removal. That can only be accomplished by means of court-ordered remand.

There is no express bar in the removal statute or in the Bankruptcy Rules to the removing party requesting remand. Under the companion federal statute, 28 U.S.C. § 1441, it has been held that the removing party can seek remand since the parties may not confer subject-matter jurisdiction on the court by consent or waiver when such jurisdiction does not exist. *See Coditron Corp. v. AFA Protective Systems, Inc.,* 392 F.Supp. 158 (S.D.N.Y.1975). *See also Hoffman v. Roberto,* 85 B.R. 417 (D.C. W.D. Mich.1988) (A defendant does not waive his right to object to the federal court's jurisdiction by removal of the case).

### Remand Should Not Be Based on the Order to Show Cause

In its OSC, the undersigned raised the issue on the propriety of removal as one affecting the court's subject-matter jurisdiction. As discussed *infra,* the undersigned is of the view that an arbitration is not removable under 28 U.S.C. § 1452(a). However, the undersigned has concluded that the bankruptcy court may have subject-matter jurisdiction over the Debtor's counterclaims even if the Arbitration were not removable. *See* 28 U.S.C. §§ 1334 and 1409 and *In re Coleman American Companies, Inc. (Littleton National Bank v.*

---

**6.** Specifically, the undersigned directed the Debtor and its counsel, the law firm of Stradley Ronon Stevens & Young (the "Stradley Firm") and James E. O'Neill, III and Donald M. Collins of the Stradley Firm, to show cause why sanctions should not be imposed on any or all of them under BR 9011.

**7.** The undersigned is satisfied that the removal was timely under BR 9027(a)(2) since the automatic stay as to the Arbitration had not been lifted at the time of removal.

*Coleman American Companies, Inc.)*, 6 B.R. 251 (Bankr.D.Colo.1980). It is unnecessary to consider the subject-matter jurisdiction issue further since by filing the Praecipe the Debtor has indicated it does not wish the bankruptcy court to retain jurisdiction.

### The Standards for Granting a Motion for Remand

Under 28 U.S.C. § 1452(b)[8], a removed action can be remanded on "any equitable ground".[9] *See generally* 1 Collier on Bankruptcy (15th Ed.1990), Par. 3.01[5][g]. Remand is also proper if the court finds that the removal fails to comply with the substantive requirements for removal found in 28 U.S.C. § 1452(a). *See, e.g., In re National Developers, Inc. (National Developers, Inc. v. Ciba–Geigy Corporation)*, 803 F.2d 616 (11th Cir.1986) (Attempted inter-district removal improper and removed action remanded); and *Hanna v. Philadelphia Asbestos Co.*, 743 F.2d 996 (3d Cir.1984) (Remand is proper if the court lacks subject-matter jurisdiction over the removed action).

The undersigned submits that on an uncontested or consensual motion for remand, the district court should be able to issue the requested order of remand under 28 U.S.C. § 1452(b) if it is satisfied that it is equitable to do so. Here the equities favor remand because neither party seeks to have the bankruptcy court retain the Arbitration and no adverse impact on the Debtor's Chapter 11 case from the remand has been demonstrated. Remand is in the interests of judicial economy because the District Court will not have to determine whether the Arbitration was properly removable.[10]

The undersigned is constrained to bring to the District Court's attention that at least one Circuit Court has held that a removed action cannot be remanded on equitable grounds unless the court first determines that it has subject-matter jurisdiction. *See Hanna*, 743 F.2d at 1001. This point of view seems to flow from non-bankruptcy removal cases in which the federal court has been held to have the unflagging duty to exercise its jurisdiction. The undersigned believes that it is unnecessary in the bankruptcy context to determine subject-matter jurisdiction in all cases because the bankruptcy court has the discretion to decline to exercise its subject-matter jurisdiction under 28 U.S.C. § 1334(c)(1). There are cases such as this one where judicial economy would best be served by presuming subject-matter jurisdiction and proceeding to consideration of equitable grounds for remand. If equitable grounds are found, the subject-matter jurisdiction issue need never be reached. Obviously, it would be inappropriate to include uncertainty about the existence of subject-matter

---

**8.** 28 U.S.C. § 1452(b) provides as follows:
"The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise."

**9.** Among the equitable grounds for remand under 28 U.S.C. § 1452(b) that the courts have relied on are the following:
(1) forum non conveniens;
(2) a holding that, if the civil action has been bifurcated by removal, the entire action should be tried in the same court;
(3) a holding that a state court is better able to respond to a suit involving questions of state law;
(4) the expertise of the court in which the matter was pending originally;
(5) prejudice to involuntarily removed parties;
(6) economical and/or duplicative use of judicial resources; and
(7) effect a remand decision would have on the estate.
*See Gorse v. Long Neck, Ltd.*, 107 B.R. 479, 20 C.B.C.2d 1461, 1464 (Bankr.D.Del.1988); and 1 Collier on Bankruptcy (15th Ed.1990), Par. 3.01[5][g] at 3–98. *See also Browning v. Navarro*, 743 F.2d 1069, 1076 n. 21 (5th Cir.1984).

**10.** The undersigned has extensively analyzed this legal issue in the course of considering whether to impose sanctions under BR 9011 and has concluded that a consensual contractual arbitration before a private arbitration group is not a civil action capable of removal. *See* Exhibit A.

jurisdiction as one of the equitable grounds for remand.[11]

## CONCLUSION

The foregoing constitutes this court's report and recommendation to the district court.

Dated: New York, New York, April 15, 1991

---

11. 28 U.S.C. § 1452(b) provides that remand under that subsection of a claim or cause of action is not reviewable by appeal or otherwise. At least some courts have held that an order of remand can be appealed if it rests on a finding of the absence of subject-matter jurisdiction or is otherwise under 28 U.S.C. § 1452(a). *See Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir. 1984). *See also Browning,* 743 F.2d at 1076 n. 21 (Follows *Pacor*). *But see Sykes v. Texas Air Corp.,* 834 F.2d 488 (5th Cir.1987) (Declines to follow *Pacor*).